Good morning. May it please the Court. The government has repeatedly attempted to prevent this Court from reaching the merits of this case, and that is because Virginia statutory burglary is not an aggravated felony, and as a result, the government's charge of removability against my client was flawed right from the start. It is the government's burden, by clear and convincing evidence, to establish that any particular defendant's conviction is an aggravated felony. The government has failed to carry that burden in this case because of the Supreme Court's decisions in Deskamps and in Mathis. Now, Mathis clearly explains the two-step procedure that this Court uses to determine whether a defendant's conviction qualifies as an aggravated felony. At the first step, the Court looks to whether the defendant's, the State's statute, is a categorical match for the Federal analog of the crime. The government concedes in this case, in their brief, that the statute isn't overbroad as against the Federal conviction in two different respects. It covers a wider range of places where the burglary can take place, and it covers a greater range of means of committing burglary. In Virginia, burglary can be committed without a breaking, whereas Federal law requires a breaking. And so, as a result, the only question that's left in the case is whether the statute is divisible. And as this Court explained in Lario-Reyes, what it means for a statute to be divisible is that the statute is separated into alternative elements as opposed to alternative means of committing the crime, and one set of those elements is a categorical match for the Federal crime. Mathis also lays out a very detailed analysis about what are the sources of evidence that this Court should look to to determine whether the alternative terms in this statute are means or elements. The first one is whether there's a controlling decision from the State supreme court. In other words, whether the Virginia supreme court has held that when the government, excuse me, when the State charges this statute, the jury is required to find unanimously and beyond a reasonable doubt that the defendant burgled a house as opposed to a ship, a storehouse, or something else. But we don't have anything like that from the Virginia supreme court for a Virginia statutory burglary. Instead, we have other cases like the Scott case, which is from the Virginia Court of Appeals, which suggests that the government is allowed to charge this statute generally. And what it means to charge a statute generally is that when this defendant was indicted, the government alleged that he broke and entered or entered in the nighttime or entered and concealed himself in the location. In other words, the statute at the trial stage is more friendly to the prosecution. They have, they don't have to specify which place and how they allege the burglary took place in. But that's a double-edged sword for the When it comes to the question of whether the statute is an aggravated felony, the government is not going to be able to meet its burden to show that the statute is a categorical match for the Federal offense. The other sources of evidence that Mathis says the court should look to are whether the text of the statute itself. If, for example, the statute specified different punishments for breaking and entering versus entering in the nighttime, then those things would necessarily have to be alternative elements. But again, that's not the case in you could have a statute that said certain things have to be charged and certain things are only examples. But again, that's not the case here. So all of the sources of evidence that Mathis says lower courts are allowed to consider for whether a statute is divisible support our position in this case, not the government's. Even if it were awash, we would still win because it's the government's burden by clearing and convincing evidence, but it's not. And the best evidence, perhaps, is the actual indictment in this case and in other cases that we have put in the record. And those indictments make it clear that when the government, when the State charges this statute, they routinely charge that the defendant committed all of the various terms without specifying particular – sometimes they specify a particular location, as they did in the indictment in this case. They specified that it was a building affixed to Realty where the burglary took place as opposed to a ship or a dwelling or a warehouse or something. But as we've shown in the indictment, which is at page 546 of the administrative record, the government's charge at the trial stage was that all of the various elements of the statute my client committed. And as a result, when he pled guilty in Virginia State Court, there was no way for – there was no record about what were the circumstances of his offense. That's exactly the problem that means that this statute is not an aggravated felony. So assuming hypothetically that you prevail on that issue, I guess the question is so what? Where does that leave your client? Your Honor, it leaves us in a much better place than we are right now because we would have a judicial determination that Mr. Kastanet-Lewis is not an aggravated felon. And that would be a very significant benefit to us moving forward. It would prevent the government in any future immigration case from charging him with an aggravated felony for any number of reasons to deny him bond. On this particular aggravated felony? Well, that's correct, Your Honor. That's right. That's true. Although there's never been any – the government's never alleged that he committed any other type of aggravated felony. So far? That's correct, Your Honor. Yes. And so he's still in Panama? Yes, Your Honor. And they've offered to bring him back to the U.S. or facilitate his return? Well, Your Honor, they offered to facilitate his return so that they could immediately put him in jail and restart immigration proceedings against him again. So what basis would that start? Excuse me, Your Honor. What basis? Well, they would – their claim was that they would initiate a Section 240 proceeding, which is not an expedited removal proceeding. On the basis of aggravated felony? No, Your Honor. On the basis of his unlawful presence, he's not authorized to be in the United States, the government alleges. So presumably they would need to come up with whatever – whyever they think he is removable, they would put him in, as they contend, not in an expedited removal proceeding, in a ordinary Section 240 proceeding. But even in that proceeding, whether he or not he is an aggravated felon is still likely to come up in at least a couple of ways. Again, as I mentioned – But I guess he's still removable because he's not lawfully admitted. Well, the government has to prove that, Your Honor. I understand that. I understand that. But on the basis of what we know – and look, I'm not arguing the government's position here. I'm just really just trying to cut to the chase. Could – would he have to return in order to have a removal hearing? I mean, technically he doesn't, right? Technically, he doesn't what? He doesn't have to return to the United States to have a removal hearing. Well, I'm not familiar with any circumstance in which a removal hearing would take place in his absence. I suppose that's theoretically possible. He couldn't dissipate through video? I guess – I mean, certainly it's physically possible, Your Honor. It would be strange. In the normal course, the immigration proceedings would take place prior to removal. Sure. This is the extraordinary case where the government is attempting to undo its deportation. But they're trying to undo it without confessing error. And that is – that makes all the difference here. Well, see – They don't have to confess error if they don't want to. They can litigate. They can. People don't have to give up their positions. Of course, Your Honor. And the government has attempted. And I think – and that's why we're here today. That's why this issue is still very much live in this case. They don't want this issue decided, I don't think. They're trying to get around it by canceling the order and that kind of stuff. But they don't want – I guess they don't want this issue of Virginia's aggravated felonies decided. They don't, Your Honor. And that's because – That's what they don't want. That's right, Your Honor. And that's because the Supreme Court's decision in – They want it. I mean, that's right. Let me ask this question. Let's rewind a little bit. Before the removal action here, would there be – would there have been any reason to remove him without being an – the allegation of an aggravated felon? Well, Your Honor, I wouldn't want to concede that, certainly, in the interest of – No, no. I'm not saying – I'm saying – no. I'm saying, assuming, let's say, that was off the table. It was no question. He's never been convicted of anything. I'll take it off the table. What – would there be a reason to remove him? Well, I think the government has asserted in their brief that they believe that he would still be removable. He's a dreamer, isn't he? In the colloquial – No. Isn't that true? Well, Your Honor, he's – he has been in this country since he was a boy. I'm not sure that he technically qualifies for the Deferred Action for Childhood Arrivals program. Because he was too old when he arrived? Because of the immigration status of his mother. And, again, I'm just not familiar enough to know. We've never been able to explore it. He's a felon in any event. And my understanding is that irrespective of whether his statute is an aggravated felony, his felony conviction would preclude him from Deferred Action for Childhood Arrivals. Okay. So I don't believe that form of relief. Now, to your question, Judge Gregory, the government has asserted that he is removable and that it would initiate a Section 240 proceeding in order to remove him. But that's never been litigated. And that's really the problem. And why? Why is he removable? Because he was originally admitted to this country on a visa. And the government's contention is that he overstayed the visa. So just he's overstayed and he's without portfolio and that kind of thing. So he could go back? That's their allegation, Your Honor. But they need... How long was he here? He was from age 13 until... He came on a visa when he was 13. Yes, Your Honor. And he was... Dependent child. Correct, Your Honor. And he was deported at age 21. Today he's 22. And so, again, it's the government's burden to establish why someone is removable. And if they think that they have an alternative basis for removability, then they should initiate a new proceeding against him. Well, they don't have to initiate a new proceeding while he's gone, do they? He's here now. No, but, Your Honor, they deported him unlawfully. The charge is wrong. And it has always been wrong. We've been trying for years to show that it's wrong. And they've never accepted it. And still today... It's your position. Of course. That's what you're trying to get us to decide. I hope very much that you will, Your Honor. And I think that the Supreme Court's decision in Mathis compels that outcome. Mathis is clear that it's a... We've got a case here. What, Foster? Did Foster help the government? Yes, Your Honor. So, Foster... A couple things about Foster. First, Foster dealt only with the locational elements of this statute, the various places. It didn't have anything to say about the alternative means of committing the... Excuse me, the alternative ways of It's also decided before Deskamps and before Mathis. It's just not relevant because it has been overruled by Deskamps and Mathis. That's our case. It is wrong. And you have to take the position that Mathis overruled it, that Foster is no longer the law. Absolutely, Your Honor. We emphatically contend that that is the case. But Foster is the precedent in this court until and unless the Supreme Court says differently, or we say differently. Absolutely, Your Honor. By court. That's quite correct, Your Honor. But Mathis has overruled Foster because Mathis... That is my... We have never said that to this point. You have not. But again, I want to... I think that the court should reach that decision in this case, that Foster has been overruled by Mathis. But I also want to point out that it's not even necessary to ever engage with Foster because Foster is only about the locational term. It doesn't address the how term. It doesn't address the fact that in Virginia, a person can be convicted of burglary without a breaking and entering, whereas under Federal law, they cannot. That was exactly the problem in Descantz with the California statute. So even if the court adhered to Foster, the statute still is not an aggravated felony. Right, because Foster said it got around the geographical by saying, based on the circumstance of the case, we know it couldn't have been on water or river, places like that. The Shepherd documents, if you're allowed, really don't help at all. Yes, Your Honor. I think that exactly illustrates the problem. Foster is a case before Mathis. It's not consistent with the categorical approach. The categorical approach is a law of willful blindness. The court does not look to the facts or the indictment. It looks to what are the elements of the statute under State law and how do those elements line up with the Federal analog. And so Foster was just decided in a different time. It's been overruled by Mathis. And Mathis says that what you look to are the controlling decisions of the State's highest court, the text of the State statute. And if those things are unclear, you can peek at the actual indictment to see how the statute is. But the point, the better point to address, Judge King, is that you really don't have to really overrule Foster if you look at it in terms of to prevail in this case. That's correct, Your Honor. You do not have to. In a brief time remaining, I would like to explain why Mr. Kestanet-Lewis has also shown his, that he was persecuted on account of a protected ground. And that was the decision that the BIA, the argument that the BIA rejected. That issue is still very much live in this case. Even under the government's conception, there's going to be a subsequent removal proceeding and we're going to have to make exactly the same arguments. I'm sorry. That's what I'm sort of stuck on. Is there going to be a further removal proceeding? Because he's declined the offer to come back. But, Your Honor, he declined to come back and be placed in a jail cell erroneously. Well, where do you get the idea that he was going to be placed in a jail cell and not admitted to bail? In our conversations with the government's counsel in the course of what would happen moving forward. Their representation was that they would, and I believe they also say in their brief that they intend to detain him as a person unlawfully in the United States. If and when he comes back. Yes, Your Honor. But what if they were coming back? No, no, that's not your, Your Honor, if the court holds that my client is not an aggravated felon, we are in a much better position than we are when the government just I think if the court holds that he's not an aggravated felon, even though, as you say, he'll still be a felon, then there's a weaker case for detaining him if and when he comes back. Absolutely, Your Honor. We would be entitled in that case to seek bond. At minimum, we'd be able to seek bond and he could get out during the You can't seek bond as an aggravated felon. That's correct, Your Honor. Okay. And that issue would also arise with respect to whether he is eligible to get relief by virtue of having a particularly serious crime conviction. So whether he's an aggravated felon makes a big difference in this case. Thank you. Thank you, counsel. May it please the Court, Emanuel Pallado for the respondent in this case, the Attorney General. As the Court may have gathered from our answering brief, the government would respectfully request that the Court consider more carefully its jurisdiction in this case in view of DHS's cancellation of the removal order, which is the subject of this appeal. What makes you think we didn't carefully consider it? Perhaps that's the poor choice. I mean, we carefully consider about everything that comes up here. I think we carefully consider everything. But we have some additional I want us to more carefully consider it. I don't All right. Well, that was a poor choice of words on my part, Your Honor. I'm sorry. The basis for our motion was the regulation What you want to say is you think we were wrong and you want us to agree with you. Yes. Yes, I'll go with that. We carefully considered it. You can count on that. I don't question that. But we have added additional I understand the Court's basis for under the regulation, which was the motion was based on the regulation only. I'm just pointing out to the Court that there are additional bases that we believe would allow DHS to cancel the FARO. Aside from the regulation we submitted to the Court previously, I get the Court's reservations about the regulation. And those additional grounds are its prosecutorial discretion and its inherent authority as an agency to reconsider decisions it has made. Here, the agency has placed Mr. Cassaday in the same position, I believe, that he would be if the Court granted his petition for review. And that is he's no longer subject to an order of removal, it's been canceled. Secondly, we have removed him because no stay was requested and he's a priority for removal. We have offered to bring him back. Apparently he only wants to come back on his terms. So that's all the Court can do is to vacate the removal order. If that happens, of course he's subject to returning. But nothing changes as far as the terms of his return. He is a factor. But he wouldn't be an aggravated felon. I'm sorry? But he wouldn't be an aggravated felon. Yes, that's true. That's correct. But I'm not clear on DHS's criteria for when they detain people and when they don't. That's DHS's call to make. And I'm not going to bind them or predict what they're going to do in this case. I was not privy to conversation. DHS makes that call and you're here for the Department of Justice. Yes, sir. But you're representing their position, aren't you? Yes. What I'm telling the Court is that I can't speak for what DHS will do when he's returned. I believe we expressed in our brief the likelihood is that if Mr. Cassaday chooses to return to the U.S., he lacks status to be here and he's also still convicted of a couple grounds for removal. I don't want to tie DHS's hands because I don't know what they plan to do here. The brief says I don't think we represent what we're going to do because what DHS would do, the bottom line is if he comes back, he lacks status to be here. So why don't you just agree that he's not an aggravated felon? I'm having a very difficult time. I know the government works in very mysterious ways. Yes, it does, Your Honor. And I'm not exposed to most of those ways. But I'm having a hard time understanding what you're protecting. Maybe that's the whole point. Let me make very clear. I'm a little mystified by that concern because from my perspective, because the notion that we don't want this Court to address whether statutory burglary is divisible or not is, I don't see how that works in real life. We can't control this Court reaching that issue. There are many cases, I think there are several cases, I know there are, pending right now before this Court in a criminal context for raising that exact issue. Exactly. That's not our motive. We want some certainty on this. We are arguing, until that issue is decided, we are arguing in this case that the statute is divisible. As Judge King mentioned, we have Foster, which the Petitioner seems to think... But Foster didn't address divisibility. Yes, it did, Your Honor. It addressed location divisibility. I'm sorry? There's two kinds of divisibility that are relevant here. Where the offense took place... No, that's not divisibility. That's how the statute is structured. We've said general divisibility is not the divisibility that matters for purposes of the categorical approach. I wrote the Baxter opinion. And both Baxter and Foster basically assumed that the modified categorical approach applies. Perspectively, Your Honor, my reading of Foster is they did look at the locations, they cited state law, Gray Bill, and they concluded that based on the text of the statute... And some unpublished opinion by this Court... It's your decision, Your Honor. But it's a non-precedential... The Foster majority clearly relied on non-precedential unpublished opinions by this Court in reasoning to its conclusion that the record was sufficient. Not only sufficient, but that the district court erred. I mean, it was remarkable. Not only was the record sufficient, but that the district court actually erred in reaching a contrary conclusion. So Foster basically held as a matter of law, under the modified categorical approach, interpreting the statute as it did, that the shepherd documents in that case were sufficient to establish that the victim locations were structures. That's what Foster stands for. We don't have to say a thing about Foster in resolving this case. My opinion in Baxter clearly applied the modified categorical approach to the Virginia burglary statute. All of this predates the Supreme Court's current jurisprudence. So I honestly don't understand what the government is swimming upstream against here. Our contention, Your Honor, is that this burglary statute, statutory burglary, is divisible under DeCamp and Mathis. And as we know, Mathis said the way you figured that out... And why are you making this motion to dismiss, repeated motions to dismiss, when the court has said to you, you're not going to dismiss the case? Why don't you argue? Tell us why it's divisible. You stood up and started talking about dismissal instead of talking about... I'm ready to discuss both issues, Your Honor, as far as... Lawyers usually start with what they think is their strongest point, and most importantly... with jurisdiction in my brief and not address it here first. I don't think the order is that critical. Fair enough. But the cases say, when you look at state case law to determine as part of the basis for deciding divisibility or not, and there are several cases that acknowledge that the state cases are not clear on whether the location and the method of entry are means or elements. There's no state appellate court decision that conclusively answers that question. So there are two cases that I believe are relevant here. And I agree with counsel that we have to show locational divisibility and also method of entry divisibility. As far as method of entry, we have Scott versus Commonwealth. In that case, the defendant was charged with entry of a structure in the nighttime, but the evidence showed he broke in the daytime. And the state sought to salvage that prosecution by saying, it doesn't matter, they're just different means of the same statute. And the Scott court said that, no, those two methods of entry are separate offenses and they require different proof. And you can't charge a defendant with one offense and convict them of a different one. So that's some indication weighing in favor of divisibility since the Scott court, the state appellate court, viewed the method of entry as it makes a difference which one you charge. As far as locational divisibility, we have the Gray Beal case, which has been frequently cited. And in that case, it was somewhat similar indictment charge that the defendant broke into an office or storehouse, but the evidence showed that he in fact broke into a trailer. And again, the state sought to salvage that prosecution by saying, it's not a problem because breaking into a trailer is also a means, a locational means that's in the statutory burglary statute. And the court said no, because that requires a different element of proof. If you were charging entry into a burglary of a trailer, you have to also show the trailer was used as a domicile or a residence. That's an extra element of proof needed. So we have two state appellate court decisions using the Mathis template to weigh in favor of divisibility. And I'll also point out, Your Honor, that Foster, I know you have the inside story on Foster, but there have been three U.S. District Court decisions since Mathis in November and December that have looked at Foster. I understand it's a trial court, but they've decided that Foster under Mathis is still good law and that the divisibility, the statutory burglary provision as to location is divisible. You also have two other district courts very recently that have said the complete opposite. So I think the point is... All days in the Fourth Circuit? Yes, sir. Virginia, U.S. District Court, Eastern and Western Districts. Okay, that's your location divisibility. What's the means? My best argument on means, Your Honor, is the Scott case I just mentioned, where... Where, where? I'm sorry, the Scott case I just mentioned, a state appellate court decision which distinguished between entry of a structure in the nighttime without breaking and entry during the daytime with or without breaking. That's the Virginia case? Yes, sir. Is that the Court of Appeals or the Supreme Court? I'm sorry, I don't know that. 636 Southeast 2nd and 893. I'm not real clear on that, Your Honor. So I'm saying here, I acknowledge this is a complicated area. I don't think it's quite as cut and... And it's your burden, isn't it? Yes, agreed. So it's complicated, then you lose. That may be the outcome, Your Honor, but I'm... That may be the outcome, that's what the law is. I'm sorry? That's what the law is. It's your burden, isn't it? Your burden... To prove who billed it, yes, sir. You're telling us it's somewhat equiposed at best. Just to be, perhaps I've been clear. My sole argument, I have two components to my argument. The first is, notwithstanding what happens in this case, we believe there's good arguments to find that the statutory burglary provision is divisible under the Mathis analysis, for the reasons I just mentioned. The state cases, there's also the structure of the statute, 18.2-91, is broken out, as Petitioner concedes, into two separate offenses. It cross-references two other burglary statutes for conduct elements. So cross-referencing can be an indication of divisibility. Additionally, it cross-references 18.2-89 and 18.2-90. 18.2-89 is generic burglary, it's common law burglary, so that's a divisible part that corresponds to generic burglary. 18.2-90, which it also cross-references, has as one of the options, entering in the day time, breaking and entering in the day time into a dwelling house or building affixed to realty. That corresponds to generic burglary. So both cross-references to different statutes can be broken down into an offense which corresponds with generic burglary. Wasn't the problem in Scott really that the charging document failed to do what Virginia law permits, and that is to charge burglary generally? I don't know that they failed to do it, they chose not to do it. Yes, they're not required to. Exactly. And when they don't do what state law permits, then they're stuck with their proof. Well, they can also amend the indictment, which the court noted that the indictment could have been amended, but it wasn't in advance. You have to go back to a grand jury and get a new indictment. The prosecutor can't amend an indictment. Well, the Commonwealth can. The Commonwealth, the grand jury has to amend it. You have to get a new indictment. Well, there was reference, Your Honor, in that decision to the fact that there was a possibility at a point in time to amend the indictment. They might fix it before they have a trial if they've got a flaw in it, but the charging document issued by a grand jury can't be fixed later by a prosecutor. I'm not questioning that. Not like a complaint. I mean, I would point out that Mathis said factual means have no legal effect or consequence. And in Scott, it did have a legal effect or consequence. One was charged, a different one was proven, and you can't, and the Scott court characterized them as different offenses. You have a notice problem there in a sense. Yes, you're correct. But the categorical approach means was it required? And in the Virginia law, it's not required. An indictment can simply allege generic statutory burglary. But when you don't do that and you try to specify, you have a notice problem. That's what Scott was talking about, but that doesn't change the analysis as to categorically what's required. It doesn't. Okay. Well, I've made my argument. I understand what you're saying, Your Honor. But that's, you know, the notion that we're not, don't want the court to construe this doesn't make a lot of sense to me because we do want, we would like guidance here. But do it now. Get your guidance now. Okay. Why wait? That's fair. Get your guidance now. I'll take that back to the new Attorney General. Well, I don't know. Well, I won't get into that. But let's say that you can have it now. But you want to do it for another time. Well, I'm sorry. In my view, Your Honor, Foster and the district court decisions I referenced, you know, provide some support for the divisibility piece. So you're ready to test your view? Well, Your Honor. Right? Yes. So you've got three district courts that agree with you. Right. And two went against you. Right. And a One-Fifth Circuit decision that also found this statute divisible. In honesty, not thoroughly. And all of them in this circuit. It's, you know. You've got something to argue about. Detroit. That's my point. I mean, the U.S. district courts, I think, would like some guidance because they're coming down on both sides of this issue. They need some guidance, too. So there's no reason that that's a reason that we need to decide it, to help out these district courts. Understood, Your Honor. If they're going different directions. My only point from our agency perspective is that it's in my client's. Have you given us all these citations? I assume that you have. Yes. They're all in the briefs. Yes. Okay. Yes, sir. We'll make sure we have them. Yes. The only reason we don't think this was a great vehicle, and I guess what we were concerned about in your dismissal of our I'm sorry, denial of our motion to dismiss based on the cancellation of the order is we believe that DHS has that authority. I understand. And they decided in this case to exercise that authority. And we don't believe that you have, that the court has, by denying our dismissal motion, the court at least indirectly reviewed the cancellation of the order and said, agency, you can't do that. That concerns the agency. As far as the, so that's one element of it. At the time we sought to remand and or dismiss this case, we were also trying to conserve the courts and our resources because there are other vehicles that are before the court right now in which it can decide this case without that jurisdictional baggage. That effort's already been expended, so that's no longer a valid reason or has much weight as far as our reasons for not. But, yes, we're happy to get your guidance and your ruling, and we will respond accordingly. The third circuit's already told you you don't have that authority, right? Well, I don't, yes, they have, but I don't agree with those unpublished views. And is there one circuit that says you do? Do I recall? No. I'm sorry, I'm not aware of any, no. So no circuit has said you do have that authority, and at least the third circuit has said you don't. That's correct. And now we've said you don't by virtue of the denial of your money. Yes, yes, he didn't give us a lot to go on there, but, yes, I get it. No means no. Our ruling on that motion is, of course, not a binding, not a presidential decision. Okay, well, that's good to hear, Your Honor. Well, it's not published, is it? I'm sorry? It's not a published opinion of the court. No, sir, no, sir. Well, that's what you have to have in this court to get circuit precedent. I understand, I understand. A non-published order or opinion is not precedent. I understand. For the next case. I know you represent the United States Attorney General, but isn't there something strange that, for example, you knew that he was a convicted felon before you did the proceedings for removal, right? That's probably why they put him in proceedings, yes. No, no, but you chose to go that route, didn't you? Aggravated felon as opposed to just a felon in someone we didn't want in this country, right? As a grounds for removal. Did you have the same? Go ahead. The grounds that you perhaps may use if he comes back, right, as a felon, right? Did you have those grounds before? Yes, and as Judge Davis noted, I mean, he's convicted of a state felony. That may or may not be an aggravated felony under the Immigration and Nationality Act. Exactly. And that conviction may, I'm completely speculating here, but that may constitute a different kind of aggravated felony under a different provision of the INA. Right. I don't know that to be the case, but that's a possibility. The bottom line is that, as Judge Davis brought out, even if you rule that you vacate the removal order based on your decision, he is no longer subject to removal. In response to what you asked previously, I don't believe that there would be any new proceedings taking place unless and until he chose to return to the U.S. because he doesn't need to be removed. He's not here. So if and when he chooses to return, which we don't know why, I don't, all I can assume is that he doesn't want to return unless it's on his own terms. I'm sorry to cut you off, but if he comes back without permission, then he's committed a new crime, right? Arguably, unless you vacate the removal order. But even if we vacate the removal order, isn't he still coming in after having been convicted of a felony? After having been removed? Yes, but if the initial order has been vacated, I don't think he's subject to those removal restrictions. I thought you canceled the removal order. Well, you told me we couldn't. Yeah, we did. Yes, sir. We did. As far as we're concerned, that has no further force in effect. Oh, is that right? Yes. So if he comes back in without permission, then he hasn't committed the offense of reentry after removal. Before, I think it's 20 years or something like that, yes. That's my understanding. He will be coming, if he returns, if he crosses the border illegally, for example. The fact that he has this Virginia felony conviction won't be of any consequence in terms of the character of his illegal reentry. I think that's correct, sir, yes. But the bottom line is, and Petitioner's counsel was not straightforward, I don't think, there is no known basis for him to be in the U.S. legally. He was initially a visa overstay, which is a ground for removal, and he was also, DHS believed, an aggravated felon because of his conviction. If it turns out that one ground is not there, I don't know exactly which statute DHS might charge him under if they do reinitiate proceedings, but it would be surprising if they didn't act because he's here without status if he returns. But if he returns, he can file a petition for asylum. Yes, sir, absolutely. In fact, if he returns and it's Section 240 proceedings, he may or may not have the option. He could not apply for asylum in this proceeding because it was believed he was an aggravated felon. That left withholding of removal and cat protection. It's possible. I don't know what all the ramifications are, but if it's a brand-new proceeding, he can certainly be free to reassert any claims he has for withholding, cat, and maybe asylum. He may or may not be disqualified from asylum depending on the grounds that may be asserted for his removability. Thank you, Your Honors. I appreciate your time. All right. We'll come to one more. Thank you, Your Honors. I want to be very clear about why whether the Court holds that this statute is an aggravated felony makes a big difference to our case. You just heard my friend say that there are likely to be further immigration proceedings in this case, and there's nothing yet we have yet to stop the government, notwithstanding their stamp of cancellation, from in that proceeding charging him with the very same aggravated felony. We would attempt to seek asylum in a Section 240 proceeding. The government might just as well say you're ineligible for asylum because you have an aggravated felony. They haven't conceded that the statute isn't an aggravated felony, and because they haven't, they have not defeated this Court's jurisdiction by mooting it out of this case. My friend also conceded that the State cases are not clear. I think that — What do you say about Scott? Scott, Your Honor, I think your analysis of it is exactly correct. The problem in Scott, as the Virginia Court of Appeals noted, was that the Commonwealth had not charged the defendant generally with statutory burglary. That's at page 76 of the opinion. What that says is that the State could have charged him generally, and they did charge him generally in this case. And so I think that you've seen it. You've seen the indictment where it says that the defendant broke and entered or entered in the nighttime or entered and remained in. So I think the proof is in the pudding that Virginia prosecutors are allowed to charge this statute generally with respect to the where terms, and that's all you need to know under Mathis to know that the statute is not an aggravated felony. It's not necessary, Judge King, to say anything about Foster if you don't want to. You must figure out instead whether the terms of this statute, the alternatively phrased terms, are elements or means. And Mathis provides the analysis for how you do that. And again, I don't think you heard anything from my friend here today at the podium or in their brief that provides clear and convincing evidence that a Virginia jury is required to unanimously agree about whether a breaking occurred or it didn't. In fact, I think what you heard is that the opposite, that the law is at best murky, and this Court's precedent in Omar Gharib is very clear that it's the government's burden by clear and convincing evidence. I do want to talk briefly about the district court opinions that have come out after Mathis. Three district court opinions have considered themselves bound by Foster and said that with respect only to the locational element, the statute's alternatively phrased terms are means and not elements, again, relying on Foster. None of those district courts held that the statute's how terms, did he break and enter, did he enter in the nighttime, are means. In fact, two district courts have, in fact, it's three. We cited two and then very recently we got a third one just in the last few days. So three district courts. So a third one when? Just in the last week, Your Honor. We'd be happy to put that in a letter briefing if you like. But in other words, every Virginia district court, every district court decision in this circuit to consider this issue with respect to the where terms has held that they are means and not elements. In other words, that the statute is not, does not qualify as an aggravated felony under Mathis. So it's unanimous going forward in our favor. And again, that's because that's the best reading of the Virginia case law. Some district courts on the location element have considered themselves bound by Foster, but again, you don't have to reach that. Now, the government has already made all of the same arguments with respect to their attempt to defeat this Court's jurisdiction. This Court rejected them at the motions panel. I understand that that's not binding, but I think the Court's decision was sound. And it's sound for the same reasons why the Third Circuit, two different panels of the Third Circuit, didn't allow the government to duck out of this issue. So again, it makes a very big difference. We are not in the same position sitting here today with a handwritten word canceled on his order of removal as we would be with a binding judicial decision from this Court that will forever preclude the government from charging him with an aggravated felony. That will affect whether he gets out during his dependency of his years-long removal proceeding. We spent two years litigating this case through the immigration courts, and my client spent the entirety of that time in jail. He doesn't want to repeat that process, but he is eager to return to this country to be reunited with his mother. This is where he spent most of his mature life. And he very much wants to return. He just wants an opportunity to get any forms of relief that he is entitled to, potentially, such as asylum, as Judge Davis mentioned. And he wants the opportunity to not be sitting in a jail cell while he does that. And the only way that we can be sure that that will happen is to get a decision from this Court applying Mathis and holding that this statute is not an aggravated felony. The best evidence that the issues in this case, including with respect to his entitlement to withholding of removal, which we submit is controlled by this Court's decision in Hernandez-Avalos, the government's objection as to that issue is that the persecutors targeted Mr. Castanet-Lewis because he knew about their criminal activity. But if the way that they figured out who knew about his criminal activity was, we'll go after the family members. They're the people that know. That suffices to demonstrate entitlement under Hernandez-Avalos. And because the government doesn't concede that he has shown the requisite nexus, and because it doesn't concede that this statute is an aggravated felony, those issues are alive in this case. Thank you. Thank you, counsel. We'll come down, Greek Council, and proceed to our last case for today.
judges: Roger L. Gregory, Robert B. King, Andre M. Davis